Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE FEED STORE, LLC, | ) | Case No. 5:16-bk-1257 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | |
| | ) | |
| MARTIN P. SHEEHAN, TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 5:17-ap-8 |
| | ) | |
| PEOPLES BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Martin P. Sheehan (the "Trustee") seeks summary judgment on his complaint against Peoples Bank, N.A. ("Peoples Bank"), requesting a declaratory judgment that Peoples Bank's lien on any personalty of The Feed Store, LLC (the "Debtor"), is ineffective as against the Trustee. Specifically, the Trustee alleges that West Virginia Code § 46-9-517, which provides that "[t]he failure of the filing office to index a record correctly does not affect the effectiveness of the filed record," deprived him of lien priority over Peoples Bank without constitutionally-sufficient notice of the existence of its lien.

Peoples Bank opposes the Trustee's motion and also seeks summary judgment. It contends that courts have universally upheld the meaning and effect of § 46-9-517, that it has a valid, perfected security interest, and that its filing of a financing statement provided the Trustee with

1

constitutionally-sufficient constructive notice despite the West Virginia Secretary of State's indexing error.[1]

For the reasons stated herein, the court will enter a separate order denying the Trustee's motion for summary judgment, granting Peoples Bank's motion for summary judgment, and dismissing the Trustee's complaint.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is only appropriate if the movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party seeking summary judgment must make a prima facie case by showing the apparent absence of any genuine dispute of material fact and the movant's entitlement to judgment as a matter of law on the basis of undisputed facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The movant bears the burden of proof to establish that there is no genuine dispute of material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). Showing an absence of any genuine dispute as to any material fact satisfies this burden. *Id.* at 323. Material facts are those necessary to establish the elements of the cause of action. *Anderson*, 477 U.S. at 248.  Thus, the existence of a factual dispute is material—thereby precluding summary judgment—only if the disputed fact determines the outcome under the applicable law. *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).  A movant is entitled to judgment as a matter of law if "the record as a whole could not lead a rational trier of fact to find for the non-movant." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) (citation omitted); *see also Anderson*, 477 U.S. at 248.

If the moving party satisfies this burden, the nonmoving party must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. *Celotex Corp.*, 477 U.S. at 322–23.  The court is required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Shaw*, 13 F.3d at 798.  However, the court's role is not "to weigh the evidence and determine the truth of the matter [but to] determine whether there is a need

---

[1] Peoples Bank also argues that the Trustee's power is derived from a statutorily-created fiction and does not create a constitutionally-protected property interest that would permit the Trustee to challenge the constitutionality of West Virginia Code § 46-9-517.  Based on the court's disposition on other grounds, it is unnecessary to resolve the contention of Peoples Bank in that regard.

for a trial." *Anderson*, 477 U.S. at 249–50. Nor should the court make credibility determinations. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). If no genuine issue of material fact exists, the court has a duty to prevent claims and defenses not supported in fact from proceeding to trial. *Celotex Corp.*, 477 U.S. at 317.

## II. BACKGROUND

Both parties have stipulated to the facts in this case. On April 18, 2012, the Debtor executed a promissory note and security agreement to Peoples Bank, under which the Debtor pledged a security interest in "all inventory, chattel paper, accounts, equipment and general intangibles, together with all proceeds, accessions, additions, replacements and substitutions related thereto." On April 23, 2012, Peoples Bank tendered a properly-completed UCC-1 Financing Statement and the proper filing fee to the West Virginia Secretary of State. The Secretary of State accepted the UCC-1 for filing and assigned it an instrument number. However, unbeknownst to Peoples Bank, the Secretary of State had assigned the same instrument number to another filer. This meant that Peoples Bank's financing statement did not appear in a search of the Debtor's property in the Secretary of State's database. The Secretary of State did not correct this indexing error until March 14, 2017, when it entered a statement into the database that it gave two filings the same number and that it would issue a new number for Peoples Bank's financing statement. In the interim, however, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code on December 15, 2016. On March 7, 2017, the Trustee brought this adversary proceeding. Peoples Bank filed a UCC-3 continuation statement on April 12, 2017.

## III. ANALYSIS

The Trustee alleges that the effect of West Virginia Code § 46-9-517 deprives him, as a judicial lien creditor, of priority over Peoples Bank's lien without constitutionally-sufficient notice under the Fifth and Fourteenth Amendments. Specifically, the Trustee asserts that Peoples Bank's UCC-1 financial statement was "seriously misleading" because it was mis-indexed by the West Virginia Secretary of State and thus did not appear in a search of the Secretary of State's database.[2]

---

[2] An indexing error does not result in a financing statement becoming "seriously misleading" under West Virginia's adoption of the UCC. West Virginia Code § 46-9-506 states that a financing statement is seriously misleading if it fails to sufficiently provide the debtor's name in accordance with § 46-9-503, but is not seriously misleading if the financing statement would nonetheless be discovered by a search of the filing office's records under the debtor's correct name using the filing office's standard search logic. Here, Peoples Bank's financing statement is not seriously

The Trustee also disputes the constitutionality of West Virginia Code § 46-9-517, which "imposes the risk of filing-office error on those who search the files rather than on those who file." W. Va. Code § 46-9-517 cmt. 2.

Due process does not require actual notice. *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 303 (4th Cir. 2017) (citing *Jones v. Flowers*, 547 U.S. 220, 225 (2006)). Instead, due process requires only notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citing *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010)).

For example, in *Jones v. Flowers*, the United States Supreme Court held that, "when [a] mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." 547 U.S. at 225. The Court noted that, under the circumstances in *Jones*, additional reasonable steps were available to the State. *Id.* Where the government has attempted to provide notice and received no indication that anything had gone awry, "[t]he reasonableness and hence the constitutional validity of [the] chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." *Id.* at 226 (citing *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950)). However, the Court found that the government's receipt of the returned mail changed the circumstances, and that the "notice required will vary with circumstances and conditions." *Id.* at 227 (citing *Walker v. City of Hutchinson*, 352 U.S. 112, 115 (1956)).

The Court in *Jones* also reaffirmed the principle that when a party is entitled to notice, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," and that "assessing the adequacy of a particular form of notice requires balancing the 'interest of the State' against 'the individual interest sought to be protected by the Fourteenth Amendment.'" *Id.* at 229 (citing *Mullane*, 339 U.S. at 314, 315). The Court also noted that "the government's knowledge that notice pursuant to the normal procedure was

---

misleading, since neither party asserts that it failed to sufficiently provide the Debtor's name. Although the financing statement was mis-indexed, the court found no authority indicating that the mis-indexing of a financing statement renders it "seriously misleading" as that term is used in the UCC and under West Virginia law.

ineffective triggered an obligation on the government's part to take additional steps to effect notice," and that knowledge is one of the "practicalities and peculiarities" of a case that the Court takes into account in assessing the adequacy of notice in a case. *Id.* at 230–31 (citing *Mullane*, 339 U.S. at 314–15).

Here, the court finds that West Virginia Code § 46-9-517 did not deprive the Trustee of priority based upon Peoples Bank's constitutionally-sufficient attempt at notice under the circumstances. West Virginia Code § 46-9-517 copies verbatim Uniform Commercial Code § 9-517. The comments to Uniform Commercial Code § 9-517 state that "[t]his section provides that the filing office's error in mis-indexing a record does not render ineffective an otherwise effective record. As did former Section 9-401, this section imposes the risk of filing-office error on those who search the files rather than on those who file."[3] W. Va. Code § 46-9-517 cmt. 2. This allocation of indexing error responsibility to the searcher, rather than the filer, falls in line with Article 9's general preference toward senior perfected secured parties. *See* Margit Livingston, *A Rose by Any Other Name Would Smell As Sweet (or Would It?): Filing and Searching in Article 9's Public Records*, 2007 B.Y.U. L. Rev. 111, 146 (2007) ("Article 9 has always, at its core, attempted to make the world good and true and beautiful for the perfected Article 9 secured party—especially the senior perfected secured party.").

The court finds that this allocation of responsibility does not deprive the searcher of constitutionally-sufficient notice in the event of a mis-indexed filing. Principles regarding the filing of a financing statement, and Article 9 of the UCC in general, are centered upon the premise of providing predictability for all parties, security for senior lenders in their interests, and notice to potential junior secured lenders and purchasers. *See Daniel v. Stevens*, 394 S.E.2d 79, 84–85 (W. Va. 1990). The Secretary of State does make mistakes occasionally, however, and either the

---

[3] The Trustee noted that a properly completed financing statement that has been improperly rejected by the filing office "is effective as a filed record except as against a purchaser of the collateral which gives value in reasonable reliance upon the absence of the record from the files." W. Va. Code § 46-9-516(d). Although this statute places the burden of the filing office's mistaken rejection upon the filer, the filing office is also required to provide prompt notice to the filer of its rejection, § 46-9-520(b), at which time the filer could presumably attempt to refile its financing statement. The filer has no notice or opportunity to correct an inadvertently mis-indexed financing statement, as opposed to an unjustified refusal to accept it, because the filer would generally not realize such a mistake until it is too late, such as in the case at hand. The court also notes that the Trustee in this case takes the status of a judicial lien creditor under 11 U.S.C. § 544(a)(1), not a bona fide purchaser for value as contemplated under the provisions of § 46-9-516(d).

searcher or the filer must suffer the consequences in priority based upon those mistakes. The court is not persuaded by the Trustee's argument that the drafters of the UCC and, in turn, the West Virginia legislature, should have allocated responsibility of a mis-indexed filing to filers. For example, if filers were held responsible for indexing errors, filers would not only have to search for their filing initially to ensure that it was correctly indexed, but would have to periodically and continuously check the index to ensure that their statement remained correctly indexed. Even if the filer maintained their statement with diligence, a searcher may obtain a windfall if it were to look for prior liens at a time when the filer's financing statement was mis-indexed and before the filer caught the mistake and corrected it.

Regardless, as noted above, the filer's attempts at notice do not have to provide a searcher with actual notice of their filing to be constitutionally sufficient. Due process requires only that the filer's attempts at notice are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Wells Fargo*, 859 F.3d at 303 (citing *Espinosa*, 559 U.S. at 272). The court finds that a filer who properly and accurately completes a financing statement, delivers it with the proper fee to the Secretary of State, and who receives no information or notice that their filing was mis-indexed has no constitutional duty to take additional steps based upon the information available to them at the time.

### IV. CONCLUSION

Based on the foregoing, the court finds that the effect of West Virginia Code § 46-9-517 did not violate the Trustee's procedural due process right to notice under the Fifth and Fourteenth Amendments. By properly filing its financing statement, Peoples Bank took reasonable, practicable steps to provide the Trustee with constructive notice under the principles of the UCC, notwithstanding the Secretary of State's indexing error. The court further finds that West Virginia Code § 46-9-517 does not violate the United States Constitution by imposing the risk of filing-office error on searchers rather than filers. Therefore, the court will enter a separate order denying the Trustee's motion for summary judgment, granting Peoples Bank's motion for summary judgment, and dismissing the Trustee's complaint.